UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JON C. FREDBECK and COLT R. NELMS,
individually, and as Representatives of a
Class of Participants and Beneficiaries of the
Medline Industries, LP Retirement Plan,

        Plaintiffs,

        v.

MEDLINE INDUSTRIES, LP; BOARD OF
DIRECTORS OF MEDLINE INDUSTRIES,
LP; MEDLINE INDUSTRIES, LP QUALIFIED
PLANS COMMITTEE; AND MEDLINE
INDUSTRIES, LP QUALIFIED PLANS
COMMITTEE PLAN ADMINISTRATOR,

        Defendants.

Case No. 1:26-cv-8375

Class Action Complaint Under
29 U.S.C. § 1132(a)(2)

**COMPLAINT**

Plaintiffs Jon C. Fredbeck and Colt R. Nelms ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of Medline Industries, LP Retirement Plan ("Plan" or "Medline Plan"), by their counsel, WALCHESKE & LUZI, LLC, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

## I.     INTRODUCTION

1. Plaintiffs bring this action under 29 U.S.C. § 1132(a)(2) on behalf of the Plan and the Plan's participants and beneficiaries against Defendants Medline Industries, LP ("Medline); Board Of Directors of Medline Industries, LP ("Board"); Medline Industries, LP Qualified Plans Committee ("Plan Committee"); and the Medline Industries, LP Qualified Plans Committee Plan Administrator ("Plan Administrator") (collectively, "Defendants," "Medline," or "Medline Defendants"), for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461

1

("ERISA").

2.      The Medline Defendants are all fiduciaries to the Medline Plan.

3.      As fiduciaries, the Medline Defendants have an obligation to prudently curate a menu of investment options for the Medline Plan. They must regularly monitor those investment options and remove ones that become imprudent. The Plan's participants, who are current and former Medline employees, can invest their retirement savings in any of the funds that the Medline Defendants select for the Medline Plan.

4.      On or before 2009, the Plan Committee selected the T. Rowe Price Growth Stock strategy (the "TRP Growth Strategy"), which Medline offered to participants as the Plan's large-cap growth investment option (the "TRP Growth investment option").

5.      The Plan's investment option changed over time from one trust or fund vehicle to another. Those changes did not alter the investment strategy's essential characteristics. Throughout the relevant period, the investment remained a large-cap growth strategy managed by T. Rowe Price, benchmarked against the Russell 1000 Growth Index, and intended to provide participants exposure to substantially the same segment of the market.

6.      The TRP Growth Stock strategy is a large-cap growth strategy managed by T. Rowe Price. Morningstar[1] classifies the TRP Growth Stock investment option as a large-cap growth fund.

7.      The TRP Growth Stock investment option's benchmark is the Russell 1000 Growth Index. The portfolio is heavily tilted toward technology and other high-growth sectors.

8.      Large-cap growth funds typically pursue a strategy of investing in the stock of large companies with high growth potential. They are a popular category of investment. As a result, the

---

[1] Morningstar is the leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) for individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia.

Plan's fiduciaries had (and have) hundreds of different large-cap growth funds to choose from when selecting investment options for the Plan. Yet, the TRP Growth Stock investment option has been the only Large-Cap Growth option Defendants have made available to the Plan's participants since 2009, if not earlier.

9.      The TRP Growth Stock investment option is an "actively managed" fund. Active management is offered on the premise that the manager's judgment can add value relative to an appropriate benchmark after accounting for fees and risk. Persistent long-term underperformance relative to that benchmark is therefore a significant fiduciary red flag. "Passive funds," by contrast, replicate the investment holdings of those market benchmarks; they are designed to match (but not beat) benchmarks. They therefore require less effort to manage than actively managed funds and carry far lower fees.

10.      The TRP Growth Stock strategy failed its primary objective: it could not beat its benchmark. From 2019 to 2025, the cumulative investment performance of the TRP Growth Stock investment option lagged its designated benchmark—the Russell 1000 Growth Index[2]—*over the preceding three-, five-, and ten-year periods* in all seven years.  The strategy's underperformance was not isolated to a particular market cycle or short-term period. Rather, the underperformance persisted across multiple rolling time horizons and market environments, suggesting a sustained inability to add value relative to its own stated benchmark.

---

[2] The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

### T. Rowe Price Growth Stock Tr-A / Tr-B

| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| 3 - Year Return | 77.13% | 113.52% | -1.73% | 5.64% | 15.21% | 120.69% |
| 5 - Year Return | 140.77% | 182.96% | 27.67% | 88.94% | 87.71% | 59.26% |
| 10 - Year Return | 376.27% | 476.98% | 191.69% | 207.96% | 268.62% | 284.38% |

### Russell 1000 Growth TR USD

| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|---|
| 3 - Year Return | 86.03% | 141.02% | 25.22% | 29.01% | 34.83% | 125.59% |
| 5 - Year Return | 159.38% | 209.08% | 68.21% | 143.68% | 138.26% | 103.97% |
| 10 - Year Return | 389.29% | 508.25% | 273.97% | 299.72% | 371.52% | 429.06% |

11. Moreover, the Strategy underperformed other large-cap growth alternatives over the same three-, five-, and ten-year stretches. Faced with the Strategy's long-term poor performance, a prudent fiduciary monitoring the Plan in accordance with a reasonable investment review process would have placed the TRP Growth strategy on watch, investigated its persistent underperformance, compared it to readily available alternatives, and removed or replaced it well before, and certainly by, the start of the Class Period.

12. Yet, Medline took no action. It continued to include the TRP Growth Stock strategy in the Plan's lineup despite a market teeming with hundreds of large-cap growth alternatives. Some of these alternatives clearly offered participants better value for their money. For example, the Voya Russell Large Cap Growth Index Port I Fund not only performed better than the TRP Growth Stock strategy, but it also charged participants a significantly lower fee as an index fund.

13. The TRP Growth Stock investment option's poor performance continued through the Class Period, which commences July 15, 2020, and continues through the date of judgment.

14. As of December 31, 2024, Plan participants had invested over $1.6 billion in the 401(k) Plan. Approximately $97 million in the 401(k) Plan—or about 6%—was invested in the TRP Growth Stock strategy. As described in Section VIII, by failing to remove the TRP Growth Stock investment option, Defendants caused participants to lose tens of millions of dollars in retirement

savings since the start of the Class Period.

15. As fiduciaries of the Plan, Defendants are duty-bound to monitor the Plan's investments and protect participants from imprudent investment options by removing them from the Plan's lineup within a reasonable time. Yet Defendants repeatedly refused to remove the TRP Growth Stock investment option despite many years of poor performance. A prudent fiduciary would have removed the Strategy well before, but not later than the start of the Class Period, and certainly during the ensuing years of poor performance throughout the Class Period. Defendants' conduct has been imprudent.

16. To remedy Medline's breach of fiduciary duty, Plaintiffs bring this action on behalf of the Plan, its participants, and their beneficiaries under 29 U.S.C. § 1132(a)(2) to enforce the Medline Defendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty occurring during the Class Period. In addition, Plaintiffs seek such other Plan-wide equitable or remedial relief for the Plan as the Court may deem appropriate.

17. Plaintiffs suffered concrete injuries to their Plan accounts because they invested in the TRP Growth Stock strategy during the Class Period. Those injuries are fairly traceable to Defendants retaining the TRP Growth Stock strategy as an investment option, and these injuries diminished the savings in Plaintiffs' retirement accounts.

18. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

19. Plaintiffs did not have knowledge of all material facts (including, among other things, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that the Medline Defendants breached their fiduciary duties in violation of ERISA until shortly before filing of this Complaint. Further, Plaintiffs do not have actual knowledge of the specifics of the Medline Defendants' decision-making processes with respect to the Plan,

including the Medline Defendants' processes for monitoring and removing Plan investments, because this information is solely within the possession of the Medline Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

## II.    PARTIES

### A.    Plaintiffs

20.    Plaintiff Jon C. Fredbeck brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Fredbeck is a participant, as defined in 29 U.S.C. § 1002(7), in the Medline Plan during the Class Period. Plaintiff Fredbeck suffered individual injury by investing in the TRP Growth Stock strategy.

21.    Plaintiff Colt R. Nelms brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Nelms is a participant, as defined in 29 U.S.C. § 1002(7), in the Medline Plan during the Class Period. Plaintiff Nelms suffered individual injury by investing in the TRP Growth Stock strategy.

### B.    Defendants

22.    Defendant Medline Industries, LP is one of the largest manufacturers and distributors of medical-surgical products and supply-chain solutions in the world, serving hospitals, physician offices, surgery centers, nursing homes, and other healthcare providers throughout the United States and more than 100 countries. The company maintains an extensive portfolio of healthcare products and related services designed to support clinical, operational, and financial outcomes for healthcare providers. Medline's principal executive offices are located at Three Lakes Drive, Northfield, Illinois, 60093.

23.    Medline is the Plan Sponsor. As Plan Sponsor, Medline acts through its Board of Directors.

24. As required by 29 U.S. C. § 1102(a)(1), the Plan is established and maintained by a written plan document, the Medline Industries, LP Retirement Plan Document ("Plan Document").

25. Medline chose Vanguard to provide Plan administrative services during the Class Period.

26. The Board of Directors of Medline ("Board of Directors") is responsible for appointing and monitoring individuals responsible for administering and managing the Medline Plan, including those on the Plan Committee, who are responsible for selecting and monitoring Plan investments, and the Plan Administrator. All of these individuals serve at the pleasure of the Board of Directors.

27. The Plan Committee and the Plan Administrator serve as the investment oversight fiduciaries for the Plan. They are responsible for determining appropriateness of the Plan's investment offerings and monitoring investment performance, among other duties.

28. Current and former members of the Plan Committee and the Plan Administrator are fiduciaries of the Medline Plan under 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority and/or discretionary control respecting management of the Plan.

### III.  JURISDICTION, VENUE, AND STANDING

29. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2).

30. This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject Plan is administered and where at least one of the alleged breaches took place. It is also the District in which the Medline Defendants reside.

31. As participants in the Plan and holders of the TRP Growth Fund, Plaintiffs have standing to bring claims on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2), and they are participants seeking appropriate Plan-wide relief under 29 U.S.C. § 1109. Thus, Plaintiffs bring this suit under § 1132(a)(2) in a representative capacity on behalf of the Plan as a whole and seek remedies under § 1109 to protect the Plan.

## IV.     ERISA'S FIDUCIARY STANDARDS

### A.     Overview of ERISA's Fiduciary Duties of Loyalty and Prudence

32.     ERISA exists, in large part, to protect the interests of participants, and their beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

33.     "An ERISA fiduciary is . . . anyone who has substantial control over the assets, management, or administration of an ERISA plan." *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 709 (7th Cir. 1999) (citing 29 U.S.C. § 1002(21)(A)). ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Medline Plan, that are covered by ERISA.

34.     ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

35.     ERISA's fiduciary duties are "the highest known to the law." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 99 F.4th 928, 943 (7th Cir. 2024) (quoting *Halperin v. Richards*, 7 F.4th 534, 546 (7th Cir. 2021)).

36.     Even in a defined contribution plan in which participants choose their investments, plan fiduciaries must conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options. *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022).

37.     As part of its fiduciary duty, Medline "has a continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). That "continuing duty" exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Id.*

"A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id*. at 530. If an investment is imprudent, Medline "must dispose of it within a reasonable time." *Id.* (citation omitted).

38. The inquiry into the duties of loyalty and prudence is "context specific." *Id*.

39. Defendants are all ERISA fiduciaries as they exercise discretionary oversight, authority, or control over investment selection in the Medline Plan that it sponsors and provides to its employees.

40. Defendants failed to fulfill their duty to prudently control, and to monitor, the manner by which investments were selected and retained by the Medline Plan.

**B.     Fiduciary Liability Under ERISA**

41. Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to *such plan* any losses to the plan resulting from each such breach, and to restore to *such plan* any profits of such fiduciary which have been made through use of assets of the plan by fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

42. 29 U.S.C. § 1132(a)(2) is the enforcement mechanism of 29 U.S.C. § 1109. It enables participants and beneficiaries to bring civil actions to seek appropriate relief under 29 U.S.C. § 1109.

**C.     Co-Fiduciary Liability**

43. ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

i.    he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

ii.    by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

iii.    he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## V.    THE PLAN

44.    The Medline Plan is a defined contribution plan described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (hereinafter denoted as "the Code"), and is subject to the provisions of ERISA.

45.    During the Class Period, the Plan provided for retirement income for approximately 30,000 Medline employees, former employees, and their beneficiaries (the "Plan participants"). Defendants exclusively controlled the selection and retention of the Plan's investment options. Participants' retirement account balances primarily depended on contributions they made to their accounts, Medline's matching contributions, and the performance (net of fees and expenses) of the Plan's investment options.

46.    As of December 31, 2024, Plan participants had invested over $1.6 billion in the 401(k) Plan. Approximately $97 million in the 401(k) Plan—or about 6%—was invested in the TRP Growth Stock strategy.

## VI.    OVERVIEW OF INVESTMENT STRATEGIES

47.    An investment fund (or mutual fund) is a pool of money contributed by a group of investors with similar investment objectives. The investment adviser takes this pool of money and invests in different stocks on behalf of all investors in the fund. The investment adviser manages the

investments in each fund in accordance with the investment objectives and strategies set forth in each fund's investment guidelines. For providing this service, the investment adviser charges the fund an investment advisory fee.

### A. Active vs. Passive Management

48. The TRP Growth Stock investment option consists of actively managed mutual funds and collective trusts—that is, investment vehicles that rely on the professional judgment of T. Rowe Price to make decisions regarding portfolio composition. For the TRP Growth Stock investment option, T. Rowe Price decides which industries they wish to allocate assets to, as well as what stocks to buy and sell and when. T. Rowe Price 's primary focus should be to outperform the benchmark it selected for the Fund: the Russell 1000 Growth Index. Indeed, T. Rowe Price charges fees for active management on the premise that it can pick a mix of stocks that beat the benchmark.

49. Active managers run the risk that their methods and analyses, including models, tools, and data, may be flawed or incorrect and may not achieve the fund's aim. This could cause the fund to lag its benchmark. Market research suggests the vast majority of active managers fail to beat their benchmarks. Given that active managers are paid to beat their benchmark, chronic underperformance is a red flag that suggests investors are not getting their money's worth and should consider other investment options.

50. Investment research and analysis typically drive the investment decisions of actively managed funds. Factors that an investment adviser may consider include, but are not limited to, market trends, a company's financial condition, perceived risk of investing in the company, industry and sector outlook, and the underlying stock's performances in various market conditions. Based on their respective professional judgment, one investment adviser may like consumer stocks while another may like technology stocks, while a third may like stocks whose issuers focus on environmental, social, and governance ("ESG") issues.

51.     Without variations between portfolio holdings, all large-cap stock funds would own identical investment portfolios and have nearly identical investment performance. Active management offers investors the opportunity to earn superior returns through the astute selection of investments. Astute selection typically drives superior investment performance over time and distinguishes the better-performing funds from the underperforming ones. Bad asset allocation and poor investment selection generally drive long-term underperformance.

52.     Actively managed funds stand in contrast to passively managed funds, or index funds, whose objective is to replicate the holdings and investment performance of a designated benchmark index. Other than constructing a portfolio that passively tracks that of the benchmark, the investment adviser makes little, if any, investment decisions for an index fund. Compared to actively managed funds, the fees for index funds are significantly lower.

**B.      Investment Aims of Large-Cap Growth Strategies**

53.     The TRP Growth Stock investment option is a large-cap growth strategy. The stocks of the biggest companies typically dominate these funds. The principal aim of large-cap growth strategies is to provide investors with long-term growth of capital.

54.     The TRP Growth Stock investment option has a growth style. Funds with a growth style invest in stocks of companies that are projected to grow faster than other stocks. Growth is defined based on fast growth (high growth rates for earnings, sales, book value, and cash flow) and high valuations (high price ratios and low dividend yields).

**C.      Investment Risks of Large-Cap Growth Strategies**

55.     The principal categories of risks for the TRP Growth Stock investment option include: (1) market risk; (2) issuer risk; and (3) the risk of investing in growth-oriented stocks.

56.     Market risk is the chance that stock prices overall will decline. Stock markets tend to move in cycles, with periods of rising prices and periods of falling prices, so each fund is subject to the

risk that the market as a whole will fall.

57. Issuer risk is the chance that prices of, and the income generated by, individual securities of companies held by the fund (e.g., AT&T) may decline in response to various factors directly related to the issuers of such securities, including reduced demand for an issuer's goods or services, poor management performance, major litigation, investigations, or other controversies related to the issuer.

58. Investing in growth-oriented stocks also carries risk. Such stocks (e.g., Tesla) may experience larger price swings and greater potential for loss than other types of stocks, such as those that are considered value-oriented or those that historically have paid continuous dividends (e.g., Bristol Myers).

**D. Potential Investment Rewards of Actively Managed Large-Cap Growth Strategies: Fiduciaries Select Benchmarks to Evaluate Achievement of Potential Rewards**

59. Investments exist in a world ruled by investment performance. Typically, investors want a portfolio that consists of investments that meet or exceed their respective benchmarks. Whether an investment performs well is concrete rather than abstract.

60. For an actively managed investment option, the potential reward is that the option will deliver positive investment returns that exceed those of its benchmark. Investment advisers select benchmarks that they believe have similar aims, risks, and potential rewards as those of their investment options.

61. T. Rowe Price selected the Russell 1000 Growth Index as the benchmark for the TRP Stock Growth investment option. The Russell 1000 Growth Index is independently maintained by FTSE Russell, a wholly-owned subsidiary of the London Stock Exchange Group. FTSE Russell is a leading global provider of benchmarking, analytics, and data solutions for investors with over 30 years in the business. The Russell 1000 Growth Index measures the performance of the large-cap growth

segment of the U.S. stock market. It includes those Russell 1000 companies with relatively higher price-to-book ratios, higher forecast medium-term growth, and higher sales-per-share historical growth (i.e., growth companies).

**VII.   THE TRP GROWTH STOCK INVESTMENT OPTION AND COMPARATORS AND BENCHMARK**

**A.      The T. Rowe Price Growth Stock Strategy**

62.     On or before 2009, Medline selected the TRP Growth Strategy as an investment option for the Plan. During the relevant period, Medline offered the TRP Growth Strategy through different investment vehicles, including mutual fund and collective trust versions. More recently, Medline transitioned participants into collective trust versions of the strategy, including the T. Rowe Price Growth Stock Trust B.

63.     Whether offered through a mutual fund or a collective trust, the TRP Growth Stock strategy seeks long-term growth of capital through substantially the same underlying investment approach, benchmark, and portfolio-management process.

64.     The TRP Growth Stock strategy pursues its objective by investing primarily in large U.S. companies believed by its managers to possess above-average earnings growth potential. The strategy employs a bottom-up fundamental research approach focused on identifying companies with sustained revenue and earnings growth, durable competitive advantages, and strong management execution, rather than merely tracking a market index. Consistent with this approach, the strategy maintains significant exposure to growth-oriented sectors such as technology, communication services, consumer discretionary, and healthcare, and typically holds a concentrated portfolio of securities selected through the discretionary judgment of portfolio management.

65.     T. Rowe Price may include in the TRP Growth Stock investment option any stock within the U.S. large-cap growth universe.

66.     The overwhelming majority of the portfolio is invested in growth-oriented equities, as

reflected by Morningstar's classification of the Strategy in the "Large Growth" category. The remainder of the portfolio is generally invested in a limited amount of foreign securities, cash or cash equivalents, and other ancillary holdings permitted under the Strategy's investment strategy.

67. Currently, approximately 80% of the Strategy's portfolio is invested in large-cap stocks, consistent with its stated policy of investing at least 80% of its assets in companies with market capitalizations generally exceeding $4 billion at the time of purchase.

68. The TRP Growth Stock strategy is hardly the only large-cap growth investment option on the market with the same mix of aims, risks, and potential rewards described above. As set forth below, numerous substantially similar investment options existed throughout the Class Period.

### i. Comparator 1: Fidelity Blue Chip Growth K Fund (FBGKX)

69. The Fidelity Blue Chip Growth K Fund (the "Fidelity Blue Chip Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock investment option.

70. Like the TRP Growth Stock investment option, the Fidelity Blue Chip Fund is an actively managed large-cap growth fund.

71. The Fidelity Blue Chip Fund's aim is to seek capital appreciation. The Fidelity Blue Chip Fund pursues its aim by investing primarily in common stocks of companies that have above-average growth potential and normally invests at least 80% of its assets in blue-chip companies—companies that are well-known, well-established, and well-capitalized—which generally have large or medium market capitalizations.

72. Like the TRP Growth Stock investment option, the Fidelity Blue Chip Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

73. Morningstar classifies the Fidelity Blue Chip Fund as a large-cap growth fund. Currently, approximately 84% of the Fidelity Blue Chip Fund's portfolio is invested in large-cap stocks, and 46% is invested in growth-oriented stocks. The remainder is invested in bonds, cash, and

cash equivalents.

74. The Fidelity Blue Chip Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Fidelity Blue Chip Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

75. The aims, risks, and potential rewards of the Fidelity Blue Chip Fund are similar to those of the TRP Growth Stock investment option given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the Fidelity Blue Chip Fund a meaningful comparator to the TRP Growth Stock investment option.

### ii. Comparator 2: Fidelity Growth Company K Fund (FGCKX)

76. The Fidelity Growth Company K Fund (the "Fidelity Growth Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock investment option.

77. Like the TRP Growth Stock investment option, the Fidelity Growth Fund is an actively managed large-cap growth fund.

78. The Fidelity Growth Fund's aim is to seek capital appreciation. The Fidelity Growth Fund pursues its aim by investing primarily in common stocks of companies that have above-average growth potential and normally invests at least 85% of its assets in blue-chip companies—companies that are well-known, well-established, and well-capitalized—which generally have large or medium market capitalizations.

79. Like the TRP Growth Stock investment option, the Fidelity Growth Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

80. Morningstar classifies the Fidelity Growth Fund as a large-cap growth fund. Currently, approximately 85-90% of the Fidelity Growth Fund's portfolio is invested in large-cap stocks, with

the overwhelming majority of those holdings reflecting growth-oriented investment characteristics. The remainder is invested in bonds, cash, and cash equivalents.

81. The Fidelity Growth Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Fidelity Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

82. The aims, risks, and potential rewards of the Fidelity Growth Fund are similar to those of the TRP Growth Stock investment option given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the Fidelity Growth Fund a meaningful comparator to the TRP Growth Stock investment option.

### iii.     Comparator 3: JPMorgan Growth Advantage R6 Fund (JGVVX)

83. The JPMorgan Growth Advantage R6 Fund (the "JPMorgan Advantage Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock investment option.

84. Like the TRP Growth Stock investment option, the JPMorgan Advantage Fund is an actively managed large-cap growth fund.

85. The JPMorgan Advantage Fund's aim is to seek long-term capital appreciation. The JPMorgan Fund pursues its aim by investing primarily in equity securities of large-capitalization companies whose market capitalizations are similar to those within the universe of the Russell 1000 Growth Index. The JPMorgan Advantage Fund typically invests in stocks of companies that are deemed to have a potential to exceed market expectations for a prolonged period of time.

86. Like the TRP Growth Stock investment option, the JPMorgan Advantage Fund identifies the Russell 1000 Growth Index as one of its benchmarks. Morningstar classifies the JPMorgan Advantage Fund as a large-cap growth fund. Currently, approximately 75–85% of the

Fund's portfolio is invested in large-cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented investments. The remainder is invested in cash and cash equivalents.

87.     The JPMorgan Advantage Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The JPMorgan Advantage Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

88.     The aims, risks, and potential rewards of the JPMorgan Advantage Fund are similar to those of the TRP Growth Stock investment option given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the JPMorgan Advantage Fund a meaningful comparator to the TRP Growth Stock investment option.

### iv.     Comparator 4: JPMorgan Large Cap Growth R6 Fund (JLGMX)

89.     The JPMorgan Large Cap Growth R6 Fund ("JPMorgan Large Cap Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock investment option.

90.     Like the TRP Growth Stock investment option, the JPMorgan Large Cap Fund is an actively managed large-cap growth fund.

91.     The aim of the JPMorgan Large Cap Fund is to generate long-term capital growth in excess of its benchmark index. The JPMorgan Large Cap Fund pursues its aim, under normal circumstances, by investing at least 80% of its net assets in companies of a size similar to those in the Russell 1000 Growth Index, mainly in common stocks of large U.S. Companies with a focus on growth stocks.

92.     Like the TRP Growth Stock investment option, the JPMorgan Large Cap Fund identifies the Russell 1000 Growth Index as one of its benchmarks.

93. Morningstar classifies the JPMorgan Large Cap Fund as a large-cap growth fund. Currently, approximately 80%-90% of the JPMorgan Large Cap Fund's portfolio is invested in large-cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented investments. The remainder is invested in cash and cash equivalents.

94. The JPMorgan Large Cap Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The JPMorgan Large Cap Fund's principal risks are related to (1) market risk, (2) issuer risk, and (3) the risks of investing in growth-oriented stocks.

95. The aims, risks, and potential rewards of the JPMorgan Large Cap Fund are similar to those of the TRP Growth Stock investment option given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the JPMorgan Large Cap Fund a meaningful comparator to the TRP Growth Stock investment option.

### v. Comparator 5: Alger Focus Equity Fund Z (ALZFX)

96. The Alger Focus Equity Fund Z (the "Alger Fund") has similar aims, risks, and potential rewards to those of the TRP Growth Stock investment option.

97. Like the TRP Growth Stock investment option, the Alger Fund is an actively managed large-cap growth fund.

98. The aim of the Alger Fund is to generate long-term capital growth in excess of its benchmark index. The Alger Fund pursues its aim, under normal circumstances, by investing in a relatively concentrated portfolio of about 50 stocks that they believe have strong growth potential based on their fundamental research.

99. Like the TRP Growth Stock investment option, the Alger Fund identifies the Russell

1000 Growth Index as one of its benchmarks.

100. Morningstar classifies the Alger Fund as a large-cap growth fund. Currently, approximately 80%-90% of the Alger Fund's portfolio is invested in large-cap stocks, while the overwhelming majority of the portfolio reflects growth-oriented investments. The remainder is invested in cash and cash equivalents.

101. The Alger Fund's potential rewards are that the fund will generate positive investment returns that outperform its benchmark index. The Alger Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) the risks of investing in growth-oriented stocks.

102. The aims, risks, and potential rewards of the Alger Fund are similar to those of the TRP Growth Stock investment option given the similarities in the two funds' investment strategies and the types of stocks the two funds own. Moreover, both funds are actively managed investment options that seek to outperform relative to the same benchmark, the Russell 1000 Growth Index. These facts make the Alger Fund a meaningful comparator to the TRP Growth Stock investment option.

### vi. Comparator 6: Voya Russell Large Cap Growth Index Port I Fund (IRLNX)

103. The Voya Russell Large Cap Growth Index Port I Fund (the "Voya Fund") is a passively managed index fund that seeks to track the performance of a benchmark index that measures the investment return of large-capitalization growth stocks in the United States (i.e., the Russell 1000 Growth Index). The Voya Fund attempts to replicate the Russell 1000 Growth Index by investing all, or substantially all, of its assets in the stocks that make up the Index, holding each stock in approximately the same proportion as its weighting in the Index.

104. Currently, and based on the Voya Fund's index-tracking strategy and Morningstar's classification of the Fund within the "Large Growth" category, approximately 90% or more of the portfolio is invested in large-cap stocks, and virtually all of the equity holdings reflect growth-oriented investment characteristics. The remainder of the portfolio is generally invested in limited cash

positions, cash equivalents, or ancillary holdings used for liquidity and index-tracking purposes.

105. The Voya Fund's potential rewards are that it will generate investment returns in line with the Russell 1000 Growth Index. The Voya Fund's principal risks are related to: (1) market risk; (2) issuer risk; and (3) investing in growth-oriented stocks.

106. By virtue of the similarities in their respective market capitalizations, the Voya Fund and the TRP Growth Stock investment option share similar aims, rewards, and levels of risk. This makes the Voya Fund a meaningful Comparator for the TRP Growth Stock investment option.

107. Indeed, by disclosing the Russell 1000 Growth Index to the public as the appropriate benchmark for the TRP Growth Stock investment option, T. Rowe Price necessarily concludes that the Russell 1000 Growth Index shares similar aims, risks, and rewards as the TRP Growth Stock investment option.

108. The Comparator Funds are not alleged to be identical to the TRP Growth Stock investment option. They are alleged to be meaningful comparators because they occupied the same large-cap growth investment category, pursued substantially similar long-term capital growth objectives, exposed participants to similar equity-market and growth-stock risks, and were available alternatives that a prudent fiduciary could have considered when evaluating whether continued retention of the TRP Growth Stock investment option investment option remained prudent. The fact that Medline offered the strategy through different collective trust vehicles during the Class Period does not alter the fundamental similarities among these investments, all of which pursued the same large-cap growth strategy and shared the same benchmark.

109. The Voya Fund is also a meaningful comparator because the TRP Growth Stock investment option's own benchmark was the Russell 1000 Growth Index, and a low-cost index fund tracking that same benchmark would have provided participants with similar market exposure without paying for unsuccessful active management.

**VIII.   THE TRP GROWTH STOCK INVESTMENT OPTION UNDERPERFORMED ITS BENCHMARK AND COMPARATOR FUNDS FOR OVER A DECADE**

110.    Defendants are required by law to monitor the Plan's investments and remove imprudent ones. They must perform these duties with the skill of a prudent expert.

111.    For a prudent fiduciary, investment options that, on average, underperform their benchmarks over rolling three-, five-, or ten-year periods are generally candidates for removal. Upon information and belief, such guidelines are often outlined in a plan's investment policy statement.

112.    Upon information and belief, a prudent investment review process for a large defined contribution plan would have required Defendants to evaluate whether the TRP Growth Stock investment option continued to satisfy objective performance criteria, including rolling three-, five-, and ten-year returns relative to its stated benchmark, peer-group alternatives, risk-adjusted performance, fees, and the availability of materially similar lower-cost or better-performing replacements. Persistent failure across those metrics would require heightened review, watch-list placement, and, absent a documented fiduciary rationale, removal within a reasonable time.

113.    Had the Medline Defendants fulfilled their fiduciary duties with the care and skill of prudent fiduciaries, they would have monitored the Plan in accordance with a reasonable investment review process, placed the TRP Growth investment option on watch, investigated its persistent underperformance, compared it to readily available alternatives, and removed or replaced it well before, and certainly by the start of, the Class Period.

114.    Indeed, by December 31, 2019, the TRP Growth Stock investment option had underperformed each of the Russell 1000 Growth Index, the Fidelity Blue Chip Fund, the Fidelity Growth Fund, the JPMorgan Advantage Fund, the JP Morgan Large Cap Fund, the Voya Fund, and the Alger Fund ("Comparator Funds"), over the preceding three-, five-, and ten-year periods.

115.    By mid-2020, any fiduciary properly monitoring the Plan would have seen that the circumstances warranted the selection of a new option. Yet, Medline has failed to replace the TRP

22

Growth Stock investment option with any one of the many prudent alternatives available on the market through the present.

116. The performance data below is based on publicly available fund-performance data, including annual and trailing return information available to retirement plan fiduciaries, investment consultants, recordkeepers, and other market participants during the relevant periods.

117. Table 1.a, below, illustrates the underperformance of the TRP Growth Stock investment option from January 1, 2020, through December 31, 2025, relative to the Russell 1000 Growth Index and the six comparator funds. The TRP Growth Stock investment option underperformed the Russell 1000 Growth Index by nearly 65% during this period and underperformed the comparator funds by substantially more.

118. **Table 1.a** reflects the investment vehicles actually offered by the Plan during the relevant periods: (1) T. Rowe Price Growth Stock I in 2020; (2) T. Rowe Price Growth Stock Trust A from 2021 through 2023; and (3) T. Rowe Price Growth Stock Trust B from 2024 through 2025.

**Table 1.a**
**January 1, 2020 - December 31, 2025**

| Fund | Annual Performance | | | | | | Cumulative Performance |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | |
| T. Rowe Price Growth Stock I / Trust A / Trust B | 37.09% | 19.38% | -39.62% | 46.56% | 30.06% | 15.75% | **118.00%** |
| Russell 1000 Growth TR USD | 38.49% | 27.60% | -29.14% | 42.68% | 33.36% | 18.56% | **182.49%** |
| *+/- T. Rowe Price Growth Stock I / Trust A / Trust B* | *-1.40%* | *-8.22%* | *-10.49%* | *3.88%* | *-3.30%* | *-2.82%* | *-64.48%* |
| Fidelity Blue Chip Growth K | 62.38% | 22.81% | -38.40% | 55.76% | 39.80% | 19.99% | 220.93% |
| *+/- T. Rowe Price Growth Stock I / Trust A / Trust B* | *-25.28%* | *-3.43%* | *-1.22%* | *-9.20%* | *-9.75%* | *-4.24%* | *-102.93%* |
| Fidelity Growth Company K | 67.69% | 22.73% | -33.74% | 47.33% | 37.31% | 24.42% | 243.20% |
| *+/- T. Rowe Price Growth Stock I / Trust A / Trust B* | *-30.60%* | *-3.35%* | *-5.88%* | *-0.77%* | *-7.25%* | *-8.67%* | *-125.20%* |
| JPMorgan Growth Advantage R6 | 54.00% | 22.50% | -29.88% | 40.47% | 31.43% | 16.06% | 183.41% |
| *+/- T. Rowe Price Growth Stock I / Trust A / Trust B* | *-16.91%* | *-3.12%* | *-9.74%* | *6.09%* | *-1.37%* | *-0.31%* | *-65.41%* |
| JPMorgan Large Cap Growth R6 | 56.42% | 18.79% | -25.21% | 34.95% | 34.17% | 14.40% | 187.85% |
| *+/- T. Rowe Price Growth Stock I / Trust A / Trust B* | *-19.33%* | *0.59%* | *-14.41%* | *11.61%* | *-4.11%* | *1.34%* | *-69.85%* |
| Voya Russell Large Cap Growth Idx Port I | 38.46% | 30.66% | -30.03% | 45.99% | 34.60% | 18.12% | 193.85% |
| *+/- T. Rowe Price Growth Stock I / Trust A / Trust B* | *-1.37%* | *-11.29%* | *-9.60%* | *0.57%* | *-4.54%* | *-2.38%* | *-75.85%* |
| Alger Focus Equity Z | 46.12% | 20.00% | -35.75% | 44.63% | 52.22% | 40.36% | 248.15% |
| *+/- T. Rowe Price Growth Stock I / Trust A / Trust B* | *-9.03%* | *-0.62%* | *-3.87%* | *1.93%* | *-22.17%* | *-24.61%* | *-130.15%* |

119. The cumulative performance numbers in **Table 1.a** highlight the magnitude of the underperformance of the TRP Growth Stock investment option, and reflect that the TRP Growth Stock investment option remained an imprudent one for the Plan during the entire Class Period.

120. Table 1.a captures both the depth and breadth of the TRP Growth Stock investment option's underperformance relative to six meaningful benchmarks.

121. All the data presented in **Table 1.a** was available in real time, not in hindsight, to the Medline Defendants throughout the Class Period.

122. Defendants' failure to remove the T. Rowe Price Growth Stock investment option cost Plan participants tens of millions of dollars in retirement savings. On average, during the period from January 1, 2020, through December 31, 2025, the assets invested in the TRP Growth Stock investment option averaged approximately $81 million.

24

123. **Table 1.b.** compares the investment growth of $65.8 million invested in the TRP Growth Stock investment option to the growth of $65.8 million invested in each of the six comparator funds from January 1, 2020, through December 31, 2025.

124. As **Table 1.b** shows, participants would have substantially more dollars in retirement savings had Defendants replaced the TRP Growth Stock investment option with any of the comparator funds or a fund that more closely matched the Russell 1000 Growth Index.

**Table 1.b**
**January 1, 2020 - December 31, 2025**

| Fund | Annual Performance | | | | | | Cumulative Performance | Annualized Performance | Growth of $65,818,397 |
|---|---|---|---|---|---|---|---|---|---|
| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | | | |
| T. Rowe Price Growth Stock I / Trust A / Trust B | 37.09% | 19.38% | -39.62% | 46.56% | 30.06% | 15.75% | 118.00% | 13.87% | $143.5 million |
| Russell 1000 Growth TR USD | 38.49% | 27.60% | -29.14% | 42.68% | 33.36% | 18.56% | 182.49% | 18.90% | $185.9 million |
| +/- T. Rowe Price Growth Stock I / Trust A / Trust B | -1.40% | -8.22% | -10.49% | 3.88% | -3.30% | -2.82% | -64.48% | -5.03% | -$42.4 million |
| Fidelity Blue Chip Growth K | 62.38% | 22.81% | -38.40% | 55.76% | 39.80% | 19.99% | 220.93% | 21.45% | $211.2 million |
| +/- T. Rowe Price Growth Stock I / Trust A / Trust B | -25.28% | -3.43% | -1.22% | -9.20% | -9.75% | -4.24% | -102.93% | -7.58% | -$67.7 million |
| Fidelity Growth Company K | 67.69% | 22.73% | -33.74% | 47.33% | 37.31% | 24.42% | 243.20% | 22.82% | $225.9 million |
| +/- T. Rowe Price Growth Stock I / Trust A / Trust B | -30.60% | -3.35% | -5.88% | -0.77% | -7.25% | -8.67% | -125.20% | -8.95% | -$82.4 million |
| JPMorgan Growth Advantage R6 | 54.00% | 22.50% | -29.88% | 40.47% | 31.43% | 16.06% | 183.41% | 18.96% | $186.5 million |
| +/- T. Rowe Price Growth Stock I / Trust A / Trust B | -16.91% | -3.12% | -9.74% | 6.09% | -1.37% | -0.31% | -65.41% | -5.09% | -$43.1 million |
| JPMorgan Large Cap Growth R6 | 56.42% | 18.79% | -25.21% | 34.95% | 34.17% | 14.40% | 187.85% | 19.27% | $189.5 million |
| +/- T. Rowe Price Growth Stock I / Trust A / Trust B | -19.33% | 0.59% | -14.41% | 11.61% | -4.11% | 1.34% | -69.85% | -5.40% | -$46.0 million |
| Voya Russell Large Cap Growth Idx Port I | 38.46% | 30.66% | -30.03% | 45.99% | 34.60% | 18.12% | 193.85% | 19.68% | $193.4 million |
| +/- T. Rowe Price Growth Stock I / Trust A / Trust B | -1.37% | -11.29% | -9.60% | 0.57% | -4.54% | -2.38% | -75.85% | -5.81% | -$49.9 million |
| Alger Focus Equity Z | 46.12% | 20.00% | -35.75% | 44.63% | 52.22% | 40.36% | 248.15% | 23.11% | $229.1 million |
| +/- T. Rowe Price Growth Stock I / Trust A / Trust B | -9.03% | -0.62% | -3.87% | 1.93% | -22.17% | -24.61% | -130.15% | -9.24% | -$85.7 million |

125. The comparator funds listed in each of the above Tables are managed by reputable investment advisers with significant assets under management and are available to all large retirement plans, including to the Medline's Plan. Medline would not have had to scour the market to find them.

126. Defendants owed a fiduciary duty to remove the TRP Growth Stock investment option within a reasonable time after it manifested poor performance. Yet, they retained the TRP Growth Stock investment option year after year, even though it consistently failed its objectives.

25

127. Any prudent fiduciary monitoring the Plan in accordance with a reasonable investment review process would have placed the TRP Growth Stock investment option on watch, investigated its persistent underperformance, compared it to readily available alternatives, and removed or replaced it well before, and certainly by, the start of the Class Period. No prudent fiduciary would have retained the investment option, like Medline has, throughout the Class Period.

128. The inference of imprudence is reinforced by the duration, consistency, and magnitude of the TRP Growth Stock strategy's underperformance. This is not a case based on a single disappointing year, temporary volatility, or hindsight disagreement with a fiduciary's reasonable investment judgment.

129. By the start of the Class Period, the TRP Growth Stock investment option had exhibited persistent underperformance across multiple trailing periods, against its own benchmark, and against readily available alternatives in the same investment category. A prudent fiduciary process would have required Defendants to identify those red flags, investigate whether continued retention was justified, and replace the investment option absent a documented, participant-focused rationale for keeping it in the Plan. Medline failed to do this.

## IX. CLASS ACTION ALLEGATIONS

130. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a). Plaintiffs bring this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan.

131. In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to a direct individual action on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiffs seek to certify this action as a class action

on behalf of participants and beneficiaries of the Plan who invested in the TRP Growth Stock investment option during the Class Period. Specifically, Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the Plan who invested in the TRP Growth Stock investment option from July 15, 2020, through the date of judgment, excluding the Medline Defendants, any of their directors, and any officers or employees of Medline Defendants with responsibility for the Plan's investment or administrative function.

132. This Class meets the requirements of Federal Rule of Civil Procedure 23 and is certifiable as a class action for the following reasons:

a. The Class includes tens of thousands of members and is so large that joinder of all its members is impracticable.

b. There are numerous questions of law and fact common to this Class because the Medline Defendants owed the same fiduciary duties to the Plan and to all participants and beneficiaries and took a common course of actions and omissions as alleged herein as to the Plan, and not as to any individual participant, that affected all Class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include, without limitation, the following: (i) whether each of the Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a); (ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options; (iii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by retaining an imprudent investment for an unreasonable amount of time; (iv) whether Plaintiffs' claims of an imprudent process require similar inquiries and proof of the claims, and therefore implicate the same set of concerns, for all proposed members of the Class; (v) what are the

27

losses to the Plan resulting from each breach of fiduciary duty; and (vi) what Plan-wide equitable and other relief the Court should impose in light of the Medline Defendants' breach of duties.

c.  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were Plan participants who invested in the TRP Growth Stock investment option during the Class Period, and all participants in the Plan who invested in the TRP Growth Stock investment option were harmed by the Medline Defendants' fiduciary misconduct.

d.  Plaintiffs are adequate representatives of the Class because they participated in the Plan during the Class Period, invested in the TRP Growth Stock investment option, have no interest that conflicts with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent attorneys to represent the Class.

e.  There are no substantial individualized questions of law or fact among Class members on the merits of this Action.

133.    Prosecution of separate actions for these imprudent investment breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Medline Defendants in respect to the discharge of their fiduciary duties to the Plan and their personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

134.    Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate

28

because the Medline Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Plaintiffs seek reformation of the Plan to include only prudent investments, which will benefit them and other Plan participants.

135. Plaintiffs' counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Classes under Rule 23(g).

## CAUSES OF ACTION

## COUNT I

**Breach of Duty of Prudence by Mismanaging and Failing to Remove Imprudent Investments from the Plan Within a Reasonable Time**
**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against All Medline Defendants)**

136. All allegations set forth in the Complaint are realleged and incorporated herein by reference.

137. At all relevant times during the Class Period, the Medline Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Medline Plan and its assets, and/or by rendering investment advice or by having authority or responsibility to render investment advice to the Plan, and/or were designated in the governing Plan documents as a named fiduciary within the meaning of 29 U.S.C. § 1102(a).

138. 29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

139. Thus, under ERISA, the Medline Defendants, as a prudent fiduciary, should have monitored the Plan in accordance with a reasonable investment review process and should have placed the TRP Growth Stock investment option on watch, investigated its persistent underperformance,

29

compared it to readily available alternatives, and removed or replaced it well before, and certainly by, the start of the Class Period.

140. The Medline Defendants breached their fiduciary duties through an imprudent process for investigating, evaluating, and monitoring investments. The faulty process resulted in the continued retention of the TRP Growth investment option despite years of persistent underperformance relative to its benchmark and readily available alternatives. Medline Defendants failed to remove the TRP Growth Stock investment option within a reasonable time despite historical underperformance relative to its relevant benchmark index and comparator funds.

141. By failing to replace the TRP Growth Stock investment option with (a) a better-performing actively managed investment option, or (b) with a cheaper and better performing passively managed investment option (such as the Voya fund identified above), the Medline Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

142. The Medline Defendants' breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for all Class members.

143. As a direct and proximate result of the Medline Defendants' breaches of fiduciary duty, the Plan has suffered tens of millions of dollars of damages which continue to accrue and for which the Medline Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2) and 1109(a).

144. Each of the Medline Defendants is liable to make good to the Plan any losses resulting from the aforementioned breaches and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. The Medline Defendants are also subject to other Plan-wide equitable or remedial relief as appropriate, including an injunction and the removal of fiduciaries.

145. Each Medline Defendant also participated in the breach of the other Medline

Defendants, knowing that such acts were a breach, and enabled the other Medline Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties. Each Medline Defendant knew of the breach by the other Medline Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Medline Defendant is liable for any losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

## COUNT II

**Failure to Monitor Fiduciaries and Appointed Plan Committee Members**
**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against Medline, the Board, and Any Defendant With Appointment or Monitoring Authority)**

146. All allegations set forth in the Complaint are realleged and incorporated herein by reference.

147. The Medline and Medline Board Defendants had a duty to monitor the performance of each party to whom they delegated any fiduciary responsibilities. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

148. To the extent any of Medline's and the Board's monitoring duties were delegated to another fiduciary, like the Plan Committee or the Plan Administrator, Medline's and the Board's monitoring duties included an obligation to ensure that any delegated tasks were being performed prudently and in compliance with governing Plan documents.

149. The Medline and Medline Board Defendants breached their fiduciary monitoring duties by, among other things:

    a. failing to monitor their Plan Committee appointees or Plan Administrator, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' actions

and omissions in violation of ERISA;

b.  failing to monitor their Plan Committee or Plan Administrator's fiduciary process;

c.  failing to ensure that the Plan Committee or Plan Administrator had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d.  failing to remove appointees on the Plan Committee or Plan Administrator whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

150.  Each fiduciary who delegated their fiduciary responsibilities likewise breached their fiduciary monitoring duty by, among other things:

a.  failing to monitor the Plan Committee or Plan Administrator, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of Plan Committee's actions and omissions in violation of ERISA;

b.  failing to monitor the Plan Committee or Plan Administrator's fiduciary process;

c.  failing to ensure that the Plan Committee or Plan Administrator had a prudent process in place for evaluating and ensuring that investment options were prudent; and

d.  failing to remove appointees on the Plan Committee or Plan Administrator whose performance was inadequate in that they continued to allow investment options that were imprudent and otherwise violated ERISA to remain in the Plan, to the detriment of Plan participants' retirement savings.

151.  As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Medline and Medline Board Defendants discharged their fiduciary monitoring

duties, the Plan would not have suffered these losses.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the Medline Plan, and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

i. find and adjudge that the Medline Defendants have breached their fiduciary duties, as described above;

ii. find and adjudge that the Medline Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach of fiduciary duty and otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii. order the Medline Defendants to make good to the Plan the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach of fiduciary duty;

iv. find and adjudge that the Medline Defendants are liable to the Plan for appropriate Plan-wide equitable relief, including but not limited to restitution and disgorgement;

v. determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be calculated;

vi. order the Medline Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a);

vii. remove the fiduciaries who have breached their fiduciary duties;

viii. impose surcharge against the Medline Defendants and in favor of the Plan all amounts involved in, and all Plan losses arising from, any transactions or fiduciary breaches that were in violation of ERISA;

ix. reform the Plan to include only prudent investments;

x.   certify the Class, appoint the Plaintiffs as class representatives, and appoint Walcheske & Luzi, LLC, as Class Counsel;

xi.   award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine; order the Medline Defendants to pay interest to the extent allowed by law; and

xii.   grant such other equitable or remedial relief as the Court deems appropriate.

Respectfully submitted,

Date: July 15, 2026

**WALCHESKE & LUZI, LLC**

*/s/ Paul M. Secunda*
Paul M. Secunda
125 S. Wacker Drive, Suite 300
Chicago, Illinois 60606
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*